IN THE UNITED STATES DISTRICT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| PRIMUS CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-0595-cv-w-dw |
| | ) | |
| CENTREFORMAT LIMITED, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Pending before the Court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 10). For the following reasons, Defendant's motion is granted.

I.  Facts

Defendant CentreFormat, a British corporation, distributes medical equipment to healthcare providers in the European Union. CentreFormat's principal place of business is in England. (Aff. of John Thompson, ¶2). T-Med is a division of CentreFormat. Plaintiff Primus Corporation manufactures and distributes hemoglobin assay equipment and products for use with the equipment. Primus is incorporated in Missouri with its principal place of business in Kansas City, Missouri. (Aff. of Thomas Reidy, ¶2).

Beginning in late 2003, John Thompson, acting on behalf of T-Med in England, and Thomas Reidy, acting on behalf of Primus in Missouri negotiated an International Distributor Agreement (hereinafter "Agreement") via telephone, mail, facsimile and email. (Aff. of Thomas Reidy, ¶7). No one acting on behalf of CentreFormat was in Missouri at any time in connection

1

with the negotiation or execution of the Agreement.[1] (Aff. of John Thompson, ¶8).

On or about May 12, 2004, Mr. Reidy traveled to England where he met with Mr. Thompson. Some clarifications were made to the Agreement and Mr. Reidy and Mr. Thompson signed it. (Aff. of Thomas Reidy, ¶10[2]; Reply Aff. of John Thompson, ¶7). Pursuant to the Agreement T-Med agreed to purchase and distribute Primus's equipment and products in Europe. (Aff. of John Thompson, ¶5; see also Agreement, Doc. 1, Ex. A). All of the goods purchased from Primus were for delivery and sale in Europe. (Aff. of John Thompson, ¶11; Aff. of Thomas Reidy, ¶19).

Pursuant to the Agreement, delivery of Primus products ordered by CentreFormat was to be made ex works at Primus's Kansas City facility. Thus, CentreFormat took title to the products at Primus's Kansas City facility and thereafter assumed the risk of any loss. (Aff. of Thomas Reidy, ¶15; Agreement, ¶¶3, 6).

Subsequent to the execution of the agreement, CentreFormat and Primus employees exchanged telephone calls, correspondence and emails regarding invoices, payments, deliveries, and pricing, among other things. (Aff. of John Thompson, ¶9).

It is Primus policy to not sell Primus products to a buyer unless the buyer maintains

---

[1] Prior to this time period, Mr. Thompson and Mr. Reidy had entered into negotiations regarding, among other things, the purchase of a distributorship from a company named Gamidor by B.M. Browne. In these negotiations, Mr. Thompson acted not on behalf of the defendant in this case, but on behalf of B.M. Browne, a company which is neither party to this lawsuit nor the Agreement. (Aff. of Thomas Reidy; ¶¶ 3-6, 12; Reply Aff. of John Thompson, ¶¶ 2, 3, 4 and 5).

[2] Mr. Reidy's affidavit states that he signed the Agreement in England within the first several weeks of May 2002. This appears to be a typographical error, as the agreement was signed by Mr. Reidy in May 2004. (Aff. of Thomas Reidy, ¶10; Reply Aff. of John Thompson, ¶6).

2

personnel with sufficient knowledge to assist customers with the products and to provide servicing. (Aff. of Thomas Reidy, ¶13). Accordingly, the Agreement provides that Primus will "provide to [CentreFormat] training and sale support through [Primus's] facilities and personnel in Kansas City, Missouri, as often as deemed necessary by both parties." (Agreement, ¶18). Pursuant to this provision, on three separate occasions, a CentreFormat engineer traveled to Missouri to receive training by Primus regarding Primus products. (Aff. of John Thompson, ¶10).

CentreFormat is not, and has never been, authorized to do business in Missouri or in the United States. (Aff. of John Thompson, ¶3). It has never had an office, real estate, or a resident agent in either Missouri of the United States. (Aff. of John Thompson, ¶4).

Plaintiff brings this cause of action alleging breach of contract and seeking a declaratory judgment to determine the rights, obligations and liabilities of the parties under the terms of the signed written International Distributor Agreement (hereinafter "Agreement").

II.    Standard

Defendant argues that the Court lacks personal jurisdiction over Defendant pursuant to Federal Rule of Civil Procedure 12(b)(2). The burden is upon Plaintiff to establish a *prima facie* case of jurisdiction to withstand Defendant's motion to dismiss. Scullin Steel Co. v. Nat'l. Ry. Utilization Corp., 676 F.2d 309, 311 (8th Cir. 1982) ("[t]he party seeking to invoke the jurisdiction of a federal court has the burden of establishing that jurisdiction exists.").

Where, as here, the motion is based on facts not appearing in the record, the court may hear the matter on affidavits presented by the respective parties, or it may direct that the matter be heard wholly or partly on oral testimony or deposition. V.A.M.R. §55.28. Where affidavits

3

are presented, the trial court may believe or disbelieve any statements made within them.  Tiger Mfg. Corp. v. Loadstar Material Handling, 341 F. Supp. 2d 1107, 1108-09 (W.D. Mo. 2004).

In a diversity action, "[a] federal court . . . may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause."  Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004) (citations omitted).  Thus, the court must engage in a two step analysis: first, whether the Defendant committed one of the acts enumerated in the Missouri long-arm statute; and second, whether the exercise of personal jurisdiction over the Defendant comports with the requirements of the Due Process Clause of the Fourteenth Amendment.  Tiger, 341 F.Supp.2d at 1109.

A. Long-Arm Statute

The Missouri long-arm statute provides, in relevant part, for the exercise of federal jurisdiction over any "corporation . . . who in person or through an agent . . . transact[s] any business within this state [or] make[s] any contract within this state" as to a cause of action arising from the commission of the enumerated act.  MO.REV.STAT. § 506.500.1(2) - (3).

1. Transaction of Business

To support its argument that CentreFormat transacted business in Missouri, Primus points to two Agreement provisions.  The Agreement provides that the purchase price and delivery for Primus products are "Ex Works at [Primus's] plant Kansas City, Missouri."  (Agreement, ¶¶ 3, 6).  Pursuant to this provision, Primus is obligated only to make the products available to CentreFormat at Primus's premises, at which point title and risk of loss transfers to CentreFormat in Missouri.  (Agreement, ¶3).

Primus relies on Tiger Mfg. Corp. v. Loadstar Material Handling for the argument that

4

this provision constitutes the transaction of business under the Missouri long-arm statute. In Tiger, the plaintiff argued that the defendant transacted business in Missouri by accepting title to four tractors in Tiger's Missouri plant. CentreFormat correctly points out that the Tiger court rejected this argument and did not exercise jurisdiction over the defendant. However, the court rejected plaintiff's argument not because "accepting title to goods in Missouri is not the transaction of business" as CentreFormat suggests, but because in Tiger, the plaintiff did not actually deliver the goods directly the the defendant's agents in Missouri but instead sent the tractors to defendant's out of state customers. Tiger, 341 F.Supp.2d at 1110.

The record in this case is unclear as to whether Primus ships the products directly from its factory out of state. Regardless, the question is ultimately moot. Primus does not point to, nor has the Court's research revealed, any law which indicates that an "ex works" provision constitutes the transaction of business in the state of Missouri. Rather, the Court finds that the "ex works" provisions in the Agreement relate to the terms of purchase and payment and are not an indication of immediate control exercised in Missouri sufficient to constitute the "transaction of business" within the long-arm statute.[3]

Second, Primus argues that CentreFormat employee training in Missouri constitutes the transaction of business within the state. Three separate visits were made by CentreFormat engineers to Missouri to receive training by Primus regarding Primus products. (Aff. of John Thompson, ¶10). To obtain specific jurisdiction over a party, the Plaintiff must show that the

---

[3]Plaintiff also relies on U.S. Durum Milling Inc. v. Frescala Foods, Inc., 785 F.Supp. 1369 (E.D. Mo. 1992) for the proposition that the "ex works" provisions constitute control and the transaction of business in Missouri. This case, however is inapposite. In U.S. Durum, the court found that it clearly had personal jurisdiction over the defendant under the contract prong of the long-arm statute and therefore declined to even address the transaction of business prong.

5

suit arose out of an activity enumerated in the long-arm statute. MO. REV. STAT. § 506.500; Moog World Trade Corp. v. Bancomer, S.A., 90 F.3d 1382, 1384 (8th Cir. 1996) ("Jurisdiction must be based upon 'the acts of conduct set forth in the statute' . . . And the cause of action must arise from the nonresident defendant's activities in Missouri."). Primus's claim of non-payment under the Agreement in no way arises out of the three isolated training incidents in Missouri.

Lastly, Primus argues that telephone calls, correspondence, facsimiles and emails between Primus and CentreFormat employees show a pattern of transacting business in Missouri. Subsequent to the execution of the agreement, CentreFormat and Primus employees corresponded regarding invoices, payments, deliveries, pricing, among other things. (Aff. of John Thompson, ¶9). Courts have found that use of the mail or telephone communications, without more, does not constitute the transaction of business for purposes of long-arm jurisdiction in Missouri. Johnson Heater Corp. v. Deppe, 86 S.W.3d 114, 120 (Mo. Ct. App. 2002). Regardless of the fact that Missouri courts have liberally construed the statutory requirement of "transacting any business" within the state for purposes of long-arm jurisdiction, the Court is unable to conclude that "something more" exists in this case to warrant jurisdiction over CentreFormat. Scullin Steel Co., 676 F.2d. at 312; Johnson Heater Corp., 86 S.W.3d at 120.

  2. <u>Making of a contract</u>

Plaintiff additionally argues that this Court may exercise personal jurisdiction over Defendant pursuant to § 506.500.1(3). A contract is formed where the last act necessary to form a binding contract, acceptance of the contract, occurs. Johnson Heater Corp., 86 S.W.3d at 119; State ex rel Career Aviation Sales Inc. v. Cohen, 952 S.W.2d 324 (Mo. App. 1997). Plaintiff has

6

failed to make a *prima facie* showing that the Agreement was executed in Missouri and not England. Thomas Reidy, acting on behalf of Primus, signed the Agreement in England in May 2004. (Aff. of Thomas Reidy, ¶10). John Thompson testifies via affidavit that he signed the Agreement on behalf of CentreFormat in May in England. (Aff. of John Thompson, ¶5; Reply Aff. of John Thompson, ¶7). There is no evidence that the Agreement was not executed in England. (Aff. of Thomas Reidy, ¶10).

Alternatively, Plaintiff argues that the individual purchase orders submitted pursuant to the Agreement are either amendments to the Agreement or separate contracts accepted in Missouri by Primus. In support, Plaintiff cites State ex rel Career Aviation Sales Inc. v. Cohen. The Court fails to see the relevance of this case to Plaintiff's argument. Here Plaintiff asks the Court to construe the purchase orders as amendments to the Agreement or as separate contracts accepted in Missouri. In Career Aviation, a Missouri corporation signed a contract in Missouri and sent it to California to be executed by a California corporation. The California corporation signed the contract in California and returned it to Missouri where the manager of the Missouri corporation signed the document for a second time. The Missouri Court of Appeals was faced with the question of whether the contract was formed in Missouri or California, not whether the contract was a distributorship agreement, and found that the contract in question was formed in California when the defendant's agent signed it and returned it to the plaintiff.[4]

---

[4]Mr. Reidy states that he did not receive the original Agreement executed by Mr. Thompson but received a copy of the Agreement signed by Mr. Thompson via a third party. John Thompson states he signed the Agreement in May in England and that Mr. Reidy left the May 12, 2004 meeting with a copy of the signed Agreement (Aff. of John Thompson, ¶5; Reply Aff. of John Thompson, ¶8). There is no evidence that the Agreement was not executed in England. (Aff. of Thomas Reidy, ¶10). Even if Mr. Reidy left the meeting without a signed copy of the Agreement, only later receiving a signed copy, there is no indication in Career Aviation that the act of physically returning the contract to the plaintiff after defendant signed the agreement was necessary for acceptance to occur.

Plaintiff next argues that the choice of law clause of the Agreement constitutes the formation of a contract in Missouri.  The Agreement states that the "legal relations between the parties . . . [be] determined in accordance with the law of the state of Missouri."  (Agreement, ¶14).  Again, Plaintiff's reliance on its choice of caselaw is misplaced.  Plaintiff relies on Med. Shoppe Int'l Inc. v. J-Pral Corp., 662 S.W.2d 263 (Mo. App. 1983) for the assertion that the choice of law clause in the Agreement in this case constitutes the making of a contract in Missouri.  However, in Medicine Shoppe Int'l, the Agreement provided that "[t]he License Agreement shall be deemed *for all purposes* to have been made in the state of Missouri and shall be governed by and construed under and in accordance with the laws of the state of Missouri." Med. Shoppe Int'l, 662 S.W.2d at 266-267.  No language in the Primus/CentreFormat Agreement indicates that it shall be deemed to have been made in the state of Missouri.

  B. <u>Due Process</u>

Due process requires that a defendant have certain minimum contacts with the forum state such that exercise of the forum state's jurisdiction does not offend traditional notions of fair play and substantial justice.  <u>Helicopteros Nacionales de Columbia, S.A. v. Hall</u>, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Sufficient contacts exist when "the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there."  <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 287, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).  Courts evaluate "reasonable anticipation" by determining whether there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528

(1985).

In evaluating minimum contacts, the Court takes into consideration the following five factors: (1) the nature and quantity of the contacts with the forum state; (2) the quality of the contacts with the forum state; (3) the relationship between the contacts and the cause of action; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. Tiger, 341 F.Supp.2d at 1111 (citing Burger King Corp. v. Rudzewicz). The final two factors are secondary and not outcome determinative. Warner v. General Insurance Co. of America, 690 F.Supp. 830, 834 (E.D. Mo. 1988).

Primus argues that CentreFormat purposely availed itself of the privileges of doing business with a Missouri resident by entering into a transaction impacting Missouri commerce. Simply entering into a contract with a Missouri resident does not establish minimum contacts for due process purposes. Scullin Steel Co., 676 F.2d at 313. Moreover, "jurisdiction is more easily established over a non-resident seller shipping goods into the forum state than over a non-resident buyer." New Dawn Natural Foods, Inc. v. Natural Nectar Corp., 670 F.Supp. 869 (D. Mo. 1987). The opposite situation presents itself in this case, in which the non-resident is buying goods from the forum state.

CentreFormat's few Missouri contacts are insufficient to create a substantial connection with Missouri such that compelling CentreFormat to court here does not offend traditional notions of fair play and substantial justice. Use of the mail or telephone communications, without more, does not constitute the transaction of business in Missouri. Johnson Heater Corp. v. Deppe, 86 S.W.3d 114, 120 (Mo. Ct. App. 2002). While a choice of law clause may be considered regarding a defendant's purposeful availment, such a clause does not automatically

9

convey jurisdiction over a contracting party.  St. Paul Fire and Marine Ins. Co. v. Courtney Enters, Inc., 108 F.Supp.2d 1057, 1061 (D. Minn. 2000).  Nor are CentreFormat's contacts with Missouri as embodied in the employee training related to the cause of action.  Missouri's interest in providing a forum for its residents and the convenience of the parties in this case are secondary and not outcome determinative.  Warner v. General Insurance Co. of America, 690 F.Supp. 830, 834 (E.D. Mo. 1988);Charles Schmitt and Co. v. Gran Prix Auto Wholesalers, Inc., 616 F.Supp. 1191, 1194 (D. Mo. 1985).

III.   Conclusion

For the forgoing reasons, CentreFormat's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 11) is GRANTED.

IT IS SO ORDERED

     /s/ Dean Whipple  
Dean Whipple
United States District Judge

DATE: January 23, 2006

10

Case 4:05-cv-00595-DW   Document 20   Filed 01/23/06   Page 10 of 10